Mark F. Lovell CA Bar No. 246652
mark.lovell@ogletree.com
Graham M. Hoerauf CA Bar No. 307649
graham.hoerauf@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Park Tower, Fifteenth Floor
695 Town Center Drive
Costa Mesa, CA 92626
Telephone: 714-800-7900
Facsimile: 714-754-1298

Attorneys for Defendant
AIRPORT TERMINAL SERVICES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| EDGAR TRUJILLO,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>AIRPORT TERMINAL SERVICES, INC., a Missouri corporation; and DOES 1 through 20, inclusive,<br><br>　　　　Defendants. | Case No. 2:20-cv-05008-JFW-KS<br><br>**DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS/DISMISSAL (ECF #27)**<br><br>Complaint Filed: April 3, 2020<br>Trial Date: August 31, 2021<br>District Judge: Hon. John F. Walter<br>Magistrate Judge: Hon. Karen L. Stevenson |

46815454_1.docx

Case No. 2:20-cv-05008-JFW-KS
DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S RESPONSE TO
ORDER TO SHOW CAUSE RE SANCTIONS/DISMISSAL (ECF #27)

Defendant Airport Terminal Services, Inc. ("Defendant" or "ATS") hereby responds to the Court's April 13, 2021 Order to Show Cause Re Sanctions (ECF #27) directing Defendant to show why the parties did not complete mediation by the date ordered by the Court as follows:

I, Mark F. Lovell, hereby declare and state as follows:

1. I am an attorney with the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., counsel of record for Defendant in this action. I have personal knowledge of the matters set forth in this Declaration.

2. As detailed below, the Parties were unable to complete mediation by April 5, 2021 due to the continued meet and confer efforts regarding the proper group of employees that would be the subject of the mediation effort.

3. The Parties have since reached an agreement on this issue and **have scheduled a mediation with Hon. Richard Stone (Ret.) to take place on July 15, 2021**.

4. Plaintiff, a former Ramp Manager for Defendant Airport Terminal Services, Inc., asserts numerous wage and hour claims based on his allegation that he was misclassified as an exempt employee. Plaintiff, by way of his complaint, also seeks to recover PAGA penalties based on the alleged wage and hour claims. During the litigation, the proper scope of that PAGA claim (on behalf of which employees Plaintiff could recover PAGA penalties), has been an ongoing discussion. This is due, in part, to the existence of an earlier filed action, *Francisco Cisneros v. Airport Terminal Services*, Los Angeles Superior Court Case No. 18STCV06289, United States District Court, Central District of California, Case No. 2:19-cv-02798, which is pending court approval of a settlement. *Cisneros* is a class action and also seeks to recover PAGA penalties on behalf of all of Defendant's non-exempt employees in California. It includes the same claims (less Plaintiff's individual claims for misclassification) and covers a more expansive time period than this action. Despite the existence of this earlier filed matter, Plaintiff sought to recover the same PAGA

penalties on behalf of this same group of employees (all non-exempt employees in California) for an overlapping period. Defendant maintained the earlier filed action precluded such recovery and the proper scope of this matter, including mediation, should be California employees who held or currently hold the same position as Plaintiff during the relevant statutory period. This group would not include those at issue in *Cisneros*.

5. A mediation without an agreement regarding the proper scope of the PAGA claim could not have been productive. The number of non-exempt employees at issue in *Cisneros* was in excess of 2,200. Plaintiff sought to recover the same PAGA penalties for this group, as well as a much smaller group of employees in his similar position. The inclusion of those 2,200 plus employees in a mediation, especially when there is already a pending settlement involving those identical employees for the same claims, doomed it from the outset. The issue of scope needed to be resolved before settlement could even be a possibility. I and my co-counsel have repeatedly informed Plaintiff of this position and of the fact that Defendant is not willing to settle PAGA claims twice for the same employees covering the same claims and the same period.

6. On October 9, 2020, Defendant served objections to overbroad discovery requests propounded by Plaintiff in which he sought information as to all non-exempt California employees that worked at ATS. Based upon the discovery, it became apparent that Plaintiff was seeking to recover PAGA penalties that were barred due to the earlier filed action.

7. As part of the meet and confer process, my office articulated Defendant's position that Plaintiff's discovery was overbroad because it was not limited in scope to the employees that, like plaintiff, are classified by ATS as exempt employees that plaintiff alleges were misclassified. We informed Plaintiff of the existence of the earlier filed class/PAGA action. We explained that the earlier filed and overlapping action subsumed any alleged recovery of Plaintiff on behalf of those employees in this action for the same time period. We requested Plaintiff to stipulate that the proper

46815454_1.docx

1  scope of this action were the employees Plaintiff alleged were misclassified and that
2  the non-exempt employees that were the subject of the earlier filed action would need
3  to be excluded from this action, including any settlement discussions and discovery.

4      8. Absent an agreement regarding the scope, we indicated Defendant would
5  need to seek judicial intervention to address the issue of the overlap of the claims and
6  file a Motion to Stay.  Defendant provided supplemental discovery responses on
7  January 4, 2021, without providing additional information as to all non-exempt
8  employees, maintained that discovery regarding employees Plaintiff was unable to act
9  as representative for was overbroad and not relevant and continued to seek an informal
10 resolution of the issue.

11     9. Defendant believed it would be ineffective and a waste of the parties'
12 resources to mediate the matter absent a stipulation regarding the proper scope of the
13 PAGA claim.  Inserting the claims of an additional 2,200 employees, whose same
14 claims were pending settlement, precluded any chance at a settlement.

15     10. In December 2020, Plaintiff's counsel sent an email stating that she
16 would like to "circle back to the PAGA on this matter" and that she understood there
17 was an overlapping action and would like further discussion on the matter.  Counsel
18 for both parties held a telephonic conference to discuss on January 12, 2021, of which
19 I was a party.  During the call, the Parties again discussed the earlier filed action and
20 discussion of the proper scope of the case.

21     11. Again, Defendant explained that the earlier filed action precluded
22 Plaintiff from proceeding on behalf of all non-exempt employees.  During the
23 January 12, 2021 phone call, it appeared the parties agreed regarding the proper scope
24 of the matter, including the mediation, which excluded the non-exempt employees.  I,
25 along with my co-counsel, left that call fully believing and understanding that the
26 parties had reached an agreement regarding which employees were properly at issue
27 in this case, namely all exempt employees in the same position as Plaintiff which
28 Plaintiff alleged were misclassified. Based on this belief, I believed a Motion to Stay

46815454_1.docx

3

Case No. 2:20-cv-05008-JFW-KS
DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S RESPONSE TO
ORDER TO SHOW CAUSE RE SANCTIONS/DISMISSAL (ECF #27)

1 would not be necessary, and indeed would be baseless as the motion would need to be
2 based on the assertion that Plaintiff was seeking the same relief on behalf of the same
3 employees as the earlier filed action.  An agreement between the parties excluding
4 those parties prevented that situation.

5      12. On January 13, 2021, Plaintiff's counsel sent an email proposing one
6 mediator "for mediation sometime in June" and stated that a June mediation date
7 "should give our office plenty of time to resolve discovery/PAGA issues."

8      13. Defendant's counsel was understandably confused by Plaintiff's
9 reference to resolving a "PAGA issue" following the parties' verbal agreement already
10 resolving any dispute about this issue on January 12, 2021.  Defendant's counsel sent
11 numerous follow up emails trying to confirm the prior agreement, including one on
12 February 2, 2021, in which Defendant's counsel memorialized again the agreement
13 the parties had reached on January 12, 2021, reminded counsel that her client's PAGA
14 claims on behalf of all non-exempt employees would be barred by the settlement of
15 the earlier filed action and that it was Defendant's understanding and position that
16 mediation would be proceeding as to Plaintiff and other employees employed in his
17 position.  My office reiterated that based on the January 12, 2021 agreement, it had
18 refrained from filing a Motion to Stay and asked Plaintiff to confirm by email the prior
19 agreement of the parties as to the scope of the case.

20      14. In response, Plaintiff's counsel stated she did not understand why the
21 settlement of the earlier filed "class action" would impact Plaintiff's claims as to other
22 employees and suggested "we can still select a mediator while we figure this issue
23 out."  Defendant's counsel immediately responded and again reminded Plaintiff's
24 counsel that the earlier filed action was a class/PAGA action and it had previously
25 provided Plaintiff with the information (Defendant provided Plaintiff the case name
26 and number no later than December 8, 2020 – See Exhibit B at p. 5).  Defendant's
27 counsel reiterated its request for Plaintiff's counsel to confirm in writing the agreement
28 as to the scope of the employees that would be the subject of the mediation.  Plaintiff's

46815454_1.docx

4

Case No. 2:20-cv-05008-JFW-KS
DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S RESPONSE TO
ORDER TO SHOW CAUSE RE SANCTIONS/DISMISSAL (ECF #27)

counsel did not confirm the prior agreement. Attached hereto as **Exhibit "A"** is a true and correct copy of an email chain between my office and counsel for Plaintiff. Attached hereto as **Exhibit "B"** is a true and correct copy of another email chain between my office and counsel for Plaintiff.

15. I deeply regret and apologize to the Court for not taking more immediate action to seek a stay of this matter in the face of continued efforts by Plaintiff to seek recovery on behalf of employees who were the subject of another action, which was pending settlement. Rather, I had hoped to avoid the time, cost and waste of filing a motion to stay and continued to engage in further meet and confer efforts with Plaintiff on the scope of the employees that would be part of the mediation. With respect to mediation, in Defendant's view, it would have been inappropriate to have a mediator hold a date for mediation, have both sides incur the costs and time of preparing for and attending a doomed mediation on behalf of all non-exempt employees, thereby precluding the mediator and other parties from filling that date and wasting the time and resources of all parties involved. I honestly believed an agreement as to the proper scope had been reached in January such that a mediation could be scheduled prior to the April deadline, but the dissolution of any such prior agreement caused unnecessary confusion and delay.

16. In February 2021, prior counsel for ATS, Mariam Bicknell, left the firm and attorney Graham Hoerauf, has since substituted in as new counsel for Defendant.

17. On April 5, 2021, Plaintiff's counsel sent an email requesting Defendant's assistance with the joint report on the status of mediation and claimed that "I know we were discussing limits as to the PAGA but never heard back." Mr. Hoerauf responded on April 6 to introduce himself, informed Plaintiff's counsel that his review of the communications did not reflect Plaintiff's representations, and again reiterated ATS' position as to the proper scope of the case and reminded Plaintiff's counsel that assuming she would abide by the parties' prior agreement on the issue, that Defendant had always been and remained willing to mediate on behalf of those employees. Mr.

1  Hoerauf made clear that because Plaintiff was still proposing to mediate the same
2  group of employees that was already resolved in the earlier filed action, Defendant
3  would need to move forward with its Motion to Stay.
4        18. The parties had already discussed this exact issue in December 2020. In
5  an abundance of caution to ensure compliance with Local Rule 7.3, Mr. Hoerauf
6  requested a date and time to hold a pre-filing meet and confer conference on the
7  Motion to Stay. In response, Plaintiff's counsel claimed "this is the first time I am
8  hearing about this motion," despite previously discussing this very proposed motion
9  in an email correspondence dated February 4, 2021 (See Exh. A at p. 2-3), and
10  requested to hold the meet and confer the following day on April 7, 2021. Plaintiff's
11  counsel also asked to be sent the preliminary approval order in the earlier filed action,
12  which my office promptly sent despite the information being publically available to
13  Plaintiff's counsel via PACER and her having been sent the relevant case information
14  previously. Attached hereto as **Exhibit C** is a true and correct copy of an email chain
15  between my office and counsel for Plaintiff.
16        19. On April 7, 2021, the Parties held a telephonic conference to discuss
17  whether the Motion to Stay would be necessary or if Plaintiff would agree to abide by
18  the prior agreement as to the scope of the case/employees involved in the mediation.
19  On this call, Plaintiff's counsel said a Motion to Stay would not be necessary and that
20  they were willing to mediate the group of employees that worked in the same position
21  as Plaintiff, which was the parties' original agreement according to my understanding.
22  Mr. Hoerauf sent an email memorializing the agreement of the Parties and asked
23  Plaintiff's counsel to respond by email if the summary was correct (i.e. that the parties
24  have agreed that the employees in the Ramp Manager Position (01, 02, and 3)
25  anywhere in California are the subject of the mediation). Plaintiff's counsel responded
26  "correct" but that they would also like to discuss potentially representing other
27  employees past the final approval of the settlement in the earlier filed action if policies
28  had not been remedied.

46815454_1.docx

6  Case No. 2:20-cv-05008-JFW-KS
DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S RESPONSE TO
ORDER TO SHOW CAUSE RE SANCTIONS/DISMISSAL (ECF #27)

20. In light of finally having Plaintiff's agreement documented in writing, settlement was now a possibility and the parties scheduled a mediation with Hon. Richard Stone (Ret.) to take place on July 15, 2021. The Parties had agreed to several other mediators but the earliest availability was the end of 2021. Fortunately, the July 15, 2021 date opened up for the Hon. Richard Stone. This mediation should have been scheduled in January 2021 or earlier but was delayed due to the inability to obtain confirmation regarding the proper scope of the matter.

21. Defendant respectfully requests that monetary sanctions not be issued against either Defendant or Plaintiff. Defendant regrets not seeking judicial intervention earlier when it appeared the parties' agreement regarding the proper scope would not be followed. From the outset, Defendant hoped to informally resolve the issue of scope and get the matter into mediation, where the Parties could focus on the claims and damages potentially at issue. When it became apparent that Plaintiff was no longer agreeing to the proper scope, Defendant should have filed the formal Motion to Stay. Again, however, it hoped to informally resolve that issue and get the parties into a mediation where settlement was an actual possibility. It did not desire to expend money on potentially avoidable motion practice, nor did it desire to waste the parties' time and money, and that of a mediator, in a mediation with no hope of success. Until both parties agreed to comply with the agreement regarding the proper scope, settlement was not possible. Defendant mistakenly relied on its understanding of the Parties' agreement, which rendered a formal Motion to Stay unnecessary. The parties

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

46815454_1.docx

7

Case No. 2:20-cv-05008-JFW-KS
DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS/DISMISSAL (ECF #27)

have met and conferred in good faith, have agreed to the proper scope of the matter and are looking forward to mediating the matter in good faith on July 15, 2021.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on April 16, 2021, at Costa Mesa, California.

*/s/ Mark F. Lovell*
Mark F. Lovell

46815454_1.docx

8   Case No. 2:20-cv-05008-JFW-KS
DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS/DISMISSAL (ECF #27)

# PROOF OF SERVICE
*Edgar Trujillo v. Airport Terminal Services, Inc., et al.*
Case No. 2:20-cv-05008-JFW-KS

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Orange in the office of a member of the bar of this court at whose direction the service was made. My business address is 695 Town Center Drive, Suite 1500, Costa Mesa, CA 92626.

On April 16, 2021, I served the following document(s):

**DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS/DISMISSAL (ECF #27)**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as follows:

☐ **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **BY MAIL:** I deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid at Park Tower, Fifteenth Floor, 695 Town Center Drive, Costa Mesa, CA 92626.

☐ **BY OVERNIGHT DELIVERY:** I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Ogletree, Deakins, Nash, Smoak & Stewart P.C., Costa Mesa, California. I am readily familiar with Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

☐ **BY MESSENGER SERVICE:** (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

☐ **BY FACSIMILE:** by transmitting a facsimile transmission a copy of said document(s) to the following addressee(s) at the following number(s), in accordance with:

☐ the written confirmation of counsel in this action:
☐ [Federal Court] the written confirmation of counsel in this action and order of the court:

46815454_1.docx

9   Case No. 2:20-cv-05008-JFW-KS
DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS/DISMISSAL (ECF #27)

☒ **BY CM/ECF:** With the Clerk of the United States District Court of California, using the CM/ECF System. The Court's CM/ECF System will send an e-mail notification of the foregoing filing to the parties and counsel of record who are registered with the Court's CM/ECF System.

☒ **(Federal)** I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

☐ **(Federal)** I declare that I am a **member** of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on April 16, 2021, at San Diego, California.

*Pamela Blanton*
_____
Pamela Blanton

46815454_1.docx

10   Case No. 2:20-cv-05008-JFW-KS
DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S RESPONSE TO ORDER TO SHOW CAUSE RE SANCTIONS/DISMISSAL (ECF #27)

**SERVICE LIST**

| | |
|---|---|
| Ramin R. Younessi, Esq.<br>Liliuokalani H. Martin, Esq.<br>Jessica P. Gomez, Esq.<br>LAW OFFICES OF RAMIN R. YOUNESSI<br>A PROFESSIONAL LAW CORPORATION<br>3435 Wilshire Blvd., Suite 2200<br>Los Angeles, CA  90010<br>Telephone:   213-480-6200<br>Facsimile:    213-4806201<br>ryounessi@younessilaw.com<br>lmartin@younessilaw.com<br>jgomez@younessilaw.com | Attorneys for Plaintiff Edgar Trujillo |

46815454.1

46815454_1.docx

11   Case No. 2:20-cv-05008-JFW-KS
DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S RESPONSE TO
ORDER TO SHOW CAUSE RE SANCTIONS/DISMISSAL (ECF #27)