Mark F. Lovell CA Bar No. 246652
mark.lovell@ogletree.com
Graham M. Hoerauf CA Bar No. 307649
graham.hoerauf@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Park Tower, Fifteenth Floor
695 Town Center Drive
Costa Mesa, CA  92626
Telephone:   714-800-7900
Facsimile:    714-754-1298

Attorneys for Defendant
AIRPORT TERMINAL SERVICES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| EDGAR TRUJILLO,<br><br>           Plaintiff,<br><br>      v.<br><br>AIRPORT TERMINAL SERVICES, INC., a Missouri corporation; and DOES 1 through 20, inclusive,<br><br>           Defendants. | Case No. 2:20-cv-05008-JFW-KS<br><br>**DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR RECONSIDERATION TO CONTINUE AND/OR REOPEN DISCOVERY AND TO CONTINUE THE TRIAL DATE**<br><br>Complaint Filed: April 3, 2020<br>Trial Date:         August 31, 2021<br>District Judge:   Hon. John F. Walter<br>Magistrate Judge: Hon. Karen L. Stevenson |

47286986_1.docx

# **TABLE OF CONTENTS**

|     |     | Page |
| --- | --- | --- |
| I.  | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS | 2 |
|     | A. ATS Properly Responded to Plaintiff's Discovery Requests | 2 |
|     | B. ATS Timely Engaged in the *Belaire West* Process Once Plaintiff Agreed to the Proper Scope | 4 |
|     | C. Plaintiff Unnecessarily Held Up the Issuance of a Protective Order | 4 |
|     | D. Plaintiff Had Adequate Opportunity to Depose Relevant Witnesses | 6 |
| III. | LEGAL ARGUMENT | 6 |
|     | A. Plaintiff's Attempt to Rely on Documents He Never Requested to Manufacture Good Cause Is Unavailing | 8 |
|     | B. Plaintiff's Purported Inability to Challenge the Designation of Confidential Documents Does Not Establish Good Cause | 9 |
|     | C. Plaintiff's Failure to Execute a Protective Order in Good Faith Does Not Establish Good Cause | 10 |
|     | D. Plaintiff Had Ample and Appropriate Opportunity to Depose ATS Witnesses | 11 |
| IV. | CONCLUSION | 12 |

47286986_1.docx

2   Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Colasante v. Wells Fargo Corp., Inc.*,
   211 F.R.D. 555 (S.D.Iowa 2002) ........................................................................... 7

*Corkrey v. Internal Revenue Service*,
   192 F.R.D. 66 (N.D.N.Y.2000) ............................................................................. 7

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir.1992) ............................................................................. 7, 8

*In re Kirkland*,
   86 F.3d 172 (10th Cir.1996) .................................................................................. 7

*Lujano v. Omaha Pub. Power Dist.*,
   30 F.3d 1032 (8th Cir.1994) .................................................................................. 7

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
   218 F.R.D. 667 (C.D. Cal. 2003) .................................................................. 1, 2, 8

*Mission Power Eng'g Co. v. Continental Cas. Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995) ....................................................................... 1

*Zivkovic v. Southern California Edison Co.*,
   302 F.3d 1080 (9th Cir. 2002) ........................................................................... 2, 7

**Rules**

Fed. R. Civ. Proc., Rule 16 ........................................................................................ 6

Fed. R. Civ. Proc., Rule 16(b) ............................................................................ 6, 7, 8

47286986_1.docx

3    Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE

Defendant AIRPORT TERMINAL SERVICES, INC. ("Defendant") submits the following Opposition to Plaintiff's Ex Parte Application for Reconsideration to Continue and/or Reopen Discovery and to Continue Trial Date:

## I. INTRODUCTION

As a threshold issue, Plaintiff's *ex parte* application fails to comply with the Court's Standing Order. Specifically, (1) Plaintiff failed to provide proper service and proper notice regarding the deadline to oppose the application; (2) Plaintiff's application does not contain all of the required information outlined in Section 7(a)-(d) of the Court's Standing Order (ECF 10, p.13); and (3) Plaintiff's application does not provide a statement of Defendant's position. (Declaration of Graham Hoerauf in Support of Opposition to Ex Parte Application ("Hoerauf Decl."), ¶ 3). On this basis alone the application should be denied due to procedural defects related to the filing. (ECF No. 10) ("Applications that fail to conform with the Local Rules, including a statement of opposing counsel's position, **will not be considered."** (ECF 10, p. 12) (emphasis added).[1]

Moreover, the *ex parte* application should be rejected on substantive grounds as well because self-inflicted harm cannot qualify as "extraordinary relief." (ECF 10, p. 12, citing *Mission Power Eng'g Co. v. Continental Cas. Co.,* 883 F. Supp. 488 (C.D. Cal. 1995).) Plaintiff's application is really a thinly veiled attempt at a "Motion for Reconsideration" (without bothering to bring a properly noticed motion) of this Court's decision to abide by its Scheduling Order. (ECF No. 34.) Plaintiff's vague assertion of alleged "good cause" to continue the discovery cutoff is sought too late into the litigation and falls far short of the required standard. See, e.g., *Matrix Motor*

---

[1] The procedural defects associated with Plaintiff's application abound. Counsel still, as of this filing, has not: filed a proof of service with the Court; included proposed dates in a separately filed proposed order; immediately served the application "by fax or hand service" on opposing counsel; or informed that an opposition must be made within 24 hours of filing. Failure to comply with the Standing Order and, specifically, Section 7 "may result in the denial of the application or stipulation." (ECF 10, p.12.)

47286986_1.docx

1     Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION
TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE

1  *Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 672 (C.D. Cal. 2003) (denying request for continuance raised informally "only twenty-two days before the fact discovery cut-off date established by the court."); *Zivkovic v. Southern California Edison Co*., 302 F.3d 1080, 1087–88 (9th Cir. 2002) ("Zivkovic's counsel did not seek to modify [the pretrial scheduling] order until four months after the court issued the order. Zivkovic did not demonstrate diligence in complying with the dates set by the district court, and has not demonstrated 'good cause' for modifying the scheduling order, as required by Fed.R.Civ.P. 16(b)".) Here, Plaintiff has filed the application a mere <u>five days</u> prior to cut-off (and on a holiday weekend) – far less than 22 days the Court held to be insufficient in *Matrix*.

In the application, Plaintiff generically points to the following as alleged bases for the request relief: (1) ATS's document production pending a Protective Order; (2) Plaintiff's purported inability to challenge the designation of Confidential documents; (3) purportedly incomplete depositions; and (4) purportedly not produced documents. None are factually accurate or justify a continuance of the discovery cutoff.

## II.  STATEMENT OF FACTS

### A.  ATS Properly Responded to Plaintiff's Discovery Requests

On July 28, 2020, Plaintiff served written discovery, including Request for Production of Documents, Set One. (Hoerauf Decl, ¶ 4). The Parties continued the response deadline pending informal discussions regarding potential resolution. (*Id.*) Those discussions failed primarily due to a disagreement over the proper scope of Plaintiff's PAGA claim. (*Id.*) An earlier filed class/PAGA action brought on behalf of all non-exempt employees covering a longer time period and seeking the same theories of relief, prohibited Plaintiff's desired PAGA scope. (*Id.*) As such, ATS maintained that Plaintiff's discovery was overbroad and impermissible as it was not limited in scope to the proper group of employees. (*Id.*)

On October 9, 2020, following the breakdown of efforts to informally resolve the matter, ATS responded to the earlier served discovery requests. (*Id. ¶5.*) Because

47286986_1.docx

2

Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION
TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE

1 the Requests for Production included numerous improper requests, including
2 numerous requests aimed at obtaining information regarding ATS's entire workforce,
3 ATS responded and objected as appropriate. (*Id.*)

4       After some meet and confer efforts, ATS supplemented some of its responses
5 on January 4, 2021, but again maintained that discovery regarding employees Plaintiff
6 was unable to act as representative for was overbroad. (*Id.* ¶ 6.) On April 7, 16, and
7 again on April 30, 2021, Plaintiff's counsel agreed that the proper scope of the case
8 and all discovery would be limited to the position of Ramp Managers. (*Id.*) See also
9 ECF 30 ¶ 19 (recounting Plaintiff's agreement on April 7th regarding proper scope).
10 On May 5, 2021, after Plaintiff's counsel finally confirmed their agreement regarding
11 the proper scope of the PAGA claim and to narrow the scope of overly broad and
12 oppressively worded discovery requests, and after several instances of verbally
13 agreeing and later reneging on that agreement, ATS served further supplemental
14 responses. (Hoerauf Decl. ¶ 6.)

15       At no time during the various meet and confer discussions from case inception
16 through late May 2021 did Plaintiff ever mention the need for ATS to produce
17 Vidal/Vital Reports, Labor Reports and weekly schedules, "among other items." (*Id.*
18 at 7.) Despite this fact, Plaintiff bases his *ex parte* application, in part, on a purported
19 inability to obtain this information prior to the pending discovery cutoff. (*Id.*) None
20 of the discovery requests explicitly or implicitly sought the production of those
21 documents. (*Id.*) Moreover, ATS never indicated, either in a discovery response or
22 during the meet and confer process, that it had an obligation to or would produce those
23 documents. (*Id.*)

24       Plaintiff never filed a Motion to Compel regarding any of ATS's discovery
25 responses. (*Id.* ¶ 8.)

26 / / /
27 / / /
28 / / /

47286986_1.docx

3     Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION
TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE

B. **ATS Timely Engaged in the *Belaire West* Process Once Plaintiff Agreed to the Proper Scope**

After Plaintiff confirmed in writing their agreement regarding the proper scope of the PAGA claim, the parties immediately worked together to finalize the *Belaire West* notice procedure. (*Id.* ¶ 9.) That process necessarily requires time as the mailing must be prepared, the allegedly aggrieved employees need time to review the notice and respond and the responses must be reviewed and appropriate action taken in response. (*Id.*) ATS did nothing to frustrate or delay that process. (*Id.*) Early on in this litigation, ATS made its position clear that the proper scope of the PAGA claim must be limited to those employees in Plaintiff's same position, Ramp Managers, or else it would need to file a Motion to Stay due to a pending and overlapping PAGA claim covering the non-exempt employees Plaintiff hoped to represent. (*Id.*) Plaintiff's failure to agree to the proper scope is the only reason the *Belaire West* process was not initiated earlier. (*Id.*) Regardless, Plaintiff's counsel is the party that proposed and approved the timing and response period for the opt outs and even insisted on the particular notice administrator to be used. (*Id.*) Defendant timely agreed to all of Plaintiff's requests regarding the notice process. (*Id.*)

Again, ATS timely and properly objected to the discovery requests that sought the information regarding all of ATS's employees. (*Id.* ¶ 10)   Plaintiff never filed a Motion to Compel regarding any of ATS's discovery responses. (*Id.* ¶ 8).

C. **Plaintiff Unnecessarily Held Up the Issuance of a Protective Order**

During the meet and confer proceess leading to the parties' eventual agreement regarding the proper PAGA scope and ATS's further supplemental discovery responses, ATS informed Plaintiff that it would be producing confidential documents and subsequently informed Plaintiff there would need to be a mutually agreeable protective order in place before it could produce some of the information, including pay information regarding non-parties and emails between Plaintiff and his supervisor containing confidential and proprietary information regarding ATS's operations. (*Id.*

47286986_1.docx

4   Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION
TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE

¶ 11). On May 7, 2021, ATS provided Plaintiff's counsel a proposed protective order. (*Id*.) See Declaration of Jessica P. Gomez in Support of Ex Parte Application, Exhibit 2 (ECF No. 39-1). While not identical to the Magistrate Judge's model protective order, it largely tracked the language therein and included many of the exact same provisions verbatim. (Hoerauf Decl. ¶ 11.)

Plaintiff failed to execute the Protective Order or offer any proposed revisions despite ATS's repeated requests and repeated reminders that ATS could not produce Confidential documents without the protective order. (*Id*. ¶12.) Eventually, later in the month of May, Plaintiff finally proposed revisions, which deleted numerous substantive provisions of the protective order that rendered it meaningless. (*Id*.) Further meet and confer efforts failed to resolve the disagreement and Plaintiff delayed enlisting the assistance of the Magistrate Judge. (*Id*.) At the May 26, 2021 conference with the Magistrate Judge, Plaintiff agreed to every substantive provision he had originally adamantly objected to, except that the Magistrate directed Plaintiff to 1) add a single sentence clarifying that the protective order was not a prohibition on Plaintiff's attorneys ability to engage in the practice of law[2] and 2) to modify the sanctions provision for violation of the protective order to make clear that a party could request sanctions (as opposed to "immediate sanction" language). (*Id*.) The Court ordered Plaintiff to draft these two additions. (*Id*.) Ultimately, the parties agreed on a protective order that was virtually identical to the one originally proposed by ATS on May 7, 2021. (*Id*.) Plaintiff delayed filing of the protective order until after 6:00 p.m. on May 26, 2021, and on May 27, 2021, the magistrate approved the final version of the stipulate protective order. (*Id*.) Defendant produced confidential documents the same day the order was entered. (*Id*.)

---

[2] During meet and confer, Defendant repeatedly told Plaintiff's counsel there was no such restricting language as to "the practice of law" in the protective order and invited Plaintiff to propose or make any revisions necessary. (*Id*.) Plaintiff did not do this until directed to do so by the Magistrate. (*Id*.)

### D. Plaintiff Had Adequate Opportunity to Depose Relevant Witnesses

Plaintiff served his first deposition notices on May 10, 2021, a mere 22 days before the discovery cutoff. (*Id.* ¶ 13) Despite asking to depose very busy witnesses, including an Apex member of management, ATS accommodated Plaintiff's last minute requests for depositions and offered up the requested witnesses. (*Id.*) In total, ATS produced Jim Bourbannais, General Manager at Los Angeles International Airport and Plaintiff's immediate supervisor, both as the Person Most Knowledgeable on relevant topics and in his individual capacity, and Pete Carmichael, who served as Regional Vice President at the time of Plaintiff's employment. (*Id.*) Plaintiff refused Defendant's request to, as a matter of efficiency, hold the PMK and individual deposition on the same date. (*Id.*) Instead, Plaintiff deposed Jim Bourbannais on two separate occasions and Pete Carmichael on a third day, and the witnesses stayed as long as necessary to answer all question put forth by Plaintiff's counsel. (*Id.*) During all depositions, Plaintiff's counsel did not use the available time efficiently and spent an inordinate amount of time repeating asked and answered questions, discussing documents she brought up on her screen prior to introducing them as exhibits, producing illegible versions of documents and refusing to magnify an exhibit, arriving late to the start time of each and every deposition, taking unrelated phone calls during the deposition, asking Mr. Carmichael about generalized ATS policies and his areas of schooling for degrees he did not complete and his time working at a self-storage company prior to working at ATS, and asking about positions other than Ramp Managers. (*Id.*) Plaintiff had every opportunity to seek relevant discovery through these depositions yet opted to delay and avoid doing so. (*Id.*)

### III. LEGAL ARGUMENT

Rule 16 of the Federal Rules of Civil Procedure authorizes the court to enter pretrial scheduling orders, which set dates for the completion of discovery, the hearing of dispositive motions, trial, and other matters. Rule 16(b) provides that the "scheduling order shall not be modified except by leave of court and upon a showing

47286986_1.docx

6

Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE

1  of good cause." Fed.R.Civ.Proc. 16(b). Thus, when a party seeks to continue the dates
2  set by the court at a scheduling conference, it must first show "good cause" for
3  modification of the scheduling order under Rule 16(b). See *Zivkovic v. Southern*
4  *California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir.2002); *Johnson v. Mammoth*
5  *Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir.1992).

6        This "good cause" standard "primarily considers the diligence of the party
7  seeking the amendment." *Johnson*, 975 F.2d at 609. A party demonstrates good cause
8  for the modification of a scheduling order by showing that, even with the exercise of
9  due diligence, he or she was unable to meet the timetable set forth in the order. See
10 *Zivkovic*, 302 F.3d at 1087; *Johnson*, 975 F.2d at 609. "If the party seeking the
11 modification 'was not diligent, the inquiry should end' and the motion to modify
12 should not be granted." *Zivkovic*, supra, 302 F.3d at 1087 (citation omitted). See also
13 *Johnson*, supra, 975 F.2d at 609 ("Although the existence or degree of prejudice to the
14 party opposing the modification might supply additional reasons to deny a motion, the
15 focus of the inquiry is upon the moving party's reasons for seeking modification").

16       Even though Plaintiff is seemingly conceding that the delay in prosecution is
17 due to his own counsel's neglect of the case and lack of diligence, several courts have
18 held that "good cause" requires more than "excusable neglect." *See, e.g.*, *In re*
19 *Kirkland*, 86 F.3d 172, 175 (10th Cir.1996) (stating that "[t]he Pioneer court did not
20 in any way link its discussion of 'excusable neglect' with 'good cause,' " and
21 concluding that "'good cause' requires a greater showing than 'excusable neglect'");
22 *Lujano v. Omaha Pub. Power Dist.*, 30 F.3d 1032, 1035 (8th Cir.1994) ("Several
23 courts of appeals have held that good cause requires at least excusable neglect");
24 *Colasante v. Wells Fargo Corp., Inc.*, 211 F.R.D. 555, 560 (S.D.Iowa 2002) ("The
25 good cause standard requires more than excusable neglect"); *Corkrey v. Internal*
26 *Revenue Service*, 192 F.R.D. 66, 67 (N.D.N.Y.2000) (stating, in the context of a Rule
27 16(b) request for modification of a scheduling order, that "[a] difference exists in the
28 standards for 'excusable neglect' and for 'good cause'" and citing *Kirkland* ). In

47286986_1.docx

7

*Matrix*, that Court noted that "[t]he *Johnson* court held that Rule 16(b)'s reference to "good cause" was "a close correlate" of "extraordinary circumstances." *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 672 (C.D. Cal. 2003) citing *Johnson*, 975 F.2d at 610. Applying these standards, Plaintiff must be held accountable for his own lawyers' lack of diligence and the application denied.

No good cause exists to justify the requested continuance of the discovery deadline. Plaintiff's *ex parte* application is intentionally vague on details supporting the purported good cause. That is because there are no facts supporting the requested continuance. Plaintiff's last minute scramble to obtain discovery he never properly and timely sought during the discovery window should be rejected. Defendant would be severely prejudiced should the Court grant the requested relief and reward Plaintiff for his counsel's dilatory conduct and wasteful approach to this litigation. The application should be denied.

### A. Plaintiff's Attempt to Rely on Documents He Never Requested to Manufacture Good Cause Is Unavailing

Strikingly absent from Plaintiff's *ex parte* application is a copy of or citation to any discovery request that required ATS to produce the documents Plaintiff now alleges were not produced. That is because no such discovery request exists.

Plaintiff vaguely references a few documents, including "Vidal/Vital Reports, Labor Reports and weekly schedules, among other items" he claims were mentioned for the first time at an ATS deposition. Plaintiff provides no finalized or verified transcripts from these depositions to support his misstatements and distortion of the witness' testimonies. Again, he can point to no discovery request where he actually requested these documents. Plaintiff cannot feign ignorance or surprise as he was certainly aware of the existence of these documents and could have requested them at anytime prior to the discovery cutoff. He failed to do so. ATS is not and never was obligated to produce these documents, none of which have any relevance to Plaintiff's claims.

47286986_1.docx

8  Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION
TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE

The fact that additional documents were referenced in the depositions of ATS personnel belatedly noticed by Plaintiff, does not provide good cause to continue the discovery deadline. Indeed, the testimony of both Mr. Bourbannais and Mr. Carmichael make clear that these documents contain no probative information as to Ramp Managers, have no relevance or proportionality to the claims or needs at issue in the litigation, and Plaintiff has never sought these documents by way of a formal and proper discovery request. The Requests for Production served in this matter do not, explicitly or implicitly, seek these documents.

**B.   Plaintiff's Purported Inability to Challenge the Designation of Confidential Documents Does Not Establish Good Cause**

A self-inflicted inability to contest the designation of Confidential documents is not good cause to continue the discovery deadline. The Confidential designation simply prohibits Plaintiff and his counsel from using that document for any purpose unrelated to this litigation. It does not impact Plaintiff's ability to use the document for this litigation and has no bearing on its use at trial. Simply put, there is no harm to Plaintiff by being unable to contest a Confidential designation.

Moreover, Plaintiff must own his inaction in agreeing to the Protective Order. The sole reason a Protective Order was not been signed by the Magistrate Judge until May 27, 20201 is due to entirely to Plaintiff's bad faith in failing to agree to a proper protective order. ATS provided a proposed protective order on May 7, 2021 that largely tracked the Magistrate Judge's model protective order. Rather than engage in a good faith meet and confer process, Plaintiff stubbornly sought to strike numerous substantive provisions that would have rendered the Protective Order meaningless, including the provisions related to the restrictions on the use of Confidential information, the need to inform the designating party if the Confidential information is sought via a subpoena, the necessity to follow proper procedures when filing Confidential documents (i.e. follow the Local Rules), the return or destruction of Confidential information upon final disposition, a clawback provision, disclosure

47286986_1.docx

9

Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE

procedures to expert witnesses, and remedies for violation of the order. All of these largely tracked the model Protective Order and complied with applicable laws and rules. When Plaintiff finally sought the assistance of the Magistrate Judge on May 26, 2021, Plaintiff's counsel acquiesced to every single provision she originally vehemently argued must be stricken but was allowed to add single sentence that the protective order was not a restriction on the ability to practice law. To be clear, Defendant never once stated that it should be interpreted to restrict the ability to practice law and told Plaintiff's counsel as much. In the end, the parties executed a Protective Order that varied only slightly[3] from the version originally proposed by ATS in early May.

### C. Plaintiff's Failure to Execute a Protective Order in Good Faith Does Not Establish Good Cause

Again, Plaintiff seeks to ignore his failures and pass them off as good cause to justify his requested extension. Plaintiff argues he did not have various documents prior to depositions but fails to highlight his failure to execute a required protective order that was needed before those depositions.

ATS provided Plaintiff's counsel a proposed Protective Order on May 7, 2021 and made clear that it needed the protective order in place before it could produce various documents. ATS followed up with Plaintiff's counsel numerous times regarding the proposed protective order and requested they submit any proposed revisions. Plaintiff continually refused to provide any response until after much delay. The proposed revisions offered by Plaintiff effectively rendered it meaningless.

After some further meet and confer efforts, it was clear the parties were at an impasse and Plaintiff solicited the assistance of the Magistrate Judge. During the call

---

[3] At the outset, ATS immediately agreed on May 7, 2021 to Plaintiff's proposed removal of a Highly Confidential Designation and the ability of third-parties to designate documents confidential. Plaintiff repeatedly made reference to these necessary revisions and ATS repeatedly confirmed its agreement.

47286986_1.docx

10     Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION
TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE

with the Magistrate Judge, Plaintiff agreed to almost all of the provisions he had previously adamantly opposed. Plaintiff's bad faith refusal to enter into a proper protective order delayed the production of Confidential documents, which were unavailable at the time of Plaintiff's last-minute depositions.

Plaintiff's repeated failure to timely engage in discovery is not good cause to justify his requested continuance of the discovery cutoff.

### D. Plaintiff Had Ample and Appropriate Opportunity to Depose ATS Witnesses

Despite knowing the identity of the relevant witnesses from the outset of this litigation, Plaintiff delayed until 22 days before the discovery cutoff to serve his first deposition notice. Despite the inconvenience caused by Plaintiff's last minute mad dash to complete depositions, ATS provided all witnesses requested. This included a full day of deposition of Jim Bourbannais, as a Person Most Knowledgeable regarding appropriate categories, a second full day deposition of Jim Bournnais in his individual capacity and a full day deposition of Pete Carmichael, who had no independent or unique information relevant to Plaintiff's claims.

Despite this, Plaintiff now incorrectly asserts he was missing critical documents required to complete these depositions. As discussed above, Plaintiff never requested many of the documents he now complains about. Moreover, as discussed above, Plaintiff failed to agree to a proper Protective Order that would have enabled ATS to produce Confidential documents prior to the depositions. ATS did nothing to prevent the subject discovery. Plaintiff simply failed to take proper and timely action to seek discovery.

The only other specific example offered by Plaintiff of missing "critical documents" is the job description of Plaintiff's position, Ramp Manager. ATS previously produced a document that outlined the job duties of a Ramp Manager. Moreover, when Plaintiff's counsel finally mentioned the lack of a prior outdated version of the job description, ATS immediately produced it despite it never having

47286986_1.docx

11

Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE

been previously raised. Moreover, on May 27, 2021, during the deposition of Jim Bourbannais who had previously been deposed as ATS's Person Most Knowledgeable, ATS offered Plaintiff the ability to reopen the PMK deposition and ask Mr. Bourbannais regarding the subsequently produced job description. Plaintiff's counsel flatly refused the offer.

Plaintiff's counsel's refusal is telling. If that document truly was "critical" to enabling Plaintiff to depose ATS's PMK, Plaintiff would have questioned the PMK witness about it when allowed. Rather, this was simply a failed attempt to manufacture a basis to request a continuance of the discovery cutoff to remedy Plaintiff's failure to timely seek discovery.

## IV.  CONCLUSION

Both parties have had ample opportunity to complete necessary discovery in advance of the discovery cutoff. Plaintiff has failed to establish good cause to justify his request to continue the discovery cutoff. Accordingly, ATS respectfully requests that the Court deny Plaintiff's request to continue the discovery cutoff.

DATED:  May 28, 2021

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: */s/ Graham M. Hoerauf*
Mark F. Lovell
Graham M. Hoerauf
Attorneys for Defendant
AIRPORT TERMINAL SERVICES, INC.

47286986_1.docx

12   Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION
TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE

**PROOF OF SERVICE**
*Edgar Trujillo v. Airport Terminal Services, Inc., et al.*
Case No. 2:20-cv-05008-JFW-KS

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Orange in the office of a member of the bar of this court at whose direction the service was made. My business address is 695 Town Center Drive, Suite 1500, Costa Mesa, CA 92626.

On May 28, 2021, I served the following document(s):

**DEFENDANT AIRPORT TERMINAL SERVICES, INC.'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR RECONSIDERATION TO CONTINUE AND/OR REOPEN DISCOVERY AND TO CONTINUE THE TRIAL DATE**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as follows:

☐ **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **BY MAIL:** I deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid at Park Tower, Fifteenth Floor, 695 Town Center Drive, Costa Mesa, CA 92626.

☐ **BY OVERNIGHT DELIVERY:** I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Ogletree, Deakins, Nash, Smoak & Stewart P.C., Costa Mesa, California. I am readily familiar with Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

☐ **BY MESSENGER SERVICE:** (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

☒ **BY FACSIMILE to 213-480-6201:** by transmitting a facsimile transmission a copy of said document(s) to the following addressee(s) at the following number(s), in accordance with the Court's Standing Order (Document No. 10) and in accordance with:

☐ the written confirmation of counsel in this action:

47286986_1.docx

13  Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION
TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE

| | | |
|---|---|---|
| ☒ | | [Federal Court] the written confirmation of counsel in this action and order of the court: |
| ☒ | **BY CM/ECF:** | With the Clerk of the United States District Court of California, using the CM/ECF System. The Court's CM/ECF System will send an e-mail notification of the foregoing filing to the parties and counsel of record who are registered with the Court's CM/ECF System. |
| ☒ | **BY E-MAIL OR ELECTRONIC TRANSMISSION:** | Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person(s) at the e-mail addresses listed on the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |
| ☒ | **(Federal)** | I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. |
| ☐ | **(Federal)** | I declare that I am a **member** of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. |

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on May 28, 2021, at San Diego, California.

_____
Lisa Sles

47286986_1.docx

14   Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE

# SERVICE LIST

| | |
|---|---|
| Ramin R. Younessi, Esq.<br>Liliuokalani H. Martin, Esq.<br>Jessica P. Gomez, Esq.<br>Sara E. Brown, Esq.<br>LAW OFFICES OF RAMIN R. YOUNESSI<br>A PROFESSIONAL LAW CORPORATION<br>3435 Wilshire Blvd., Suite 2200<br>Los Angeles, CA  90010<br>Telephone:  213-480-6200<br>Facsimile:    213-4806201<br>ryounessi@younessilaw.com<br>lmartin@younessilaw.com<br>jgomez@younessilaw.com<br>sbrown@younessilaw.com | Attorneys for Plaintiff<br>Edgar Trujillo |

47286986.1

47286986_1.docx

15   Case No. 2:20-cv-05008-JFW-KS
OPPOSITION TO PLAINTIFF'S EX PARTE APP FOR RECONSIDERATION TO CONT. AND/OR REOPEN DISCOVERY AND CONT. TRIAL DATE